THE RITTENHOUSE & EMBREE COMPANY, Appellee, *vs.*
THE WARREN CONSTRUCTION COMPANY.—(DARIUS
MILLER *et al.* Appellants.)

*Opinion filed October 16, 1914.*

1. MECHANICS' LIENS—*foundation of mechanic's lien is a valid
contract.* The foundation of the right to a mechanic's lien is a
valid contract with the owner of the lot or tract to be improved,
or with his duly authorized agent, for the construction of an im-
provement thereon and the furnishing of material and labor, and
while the lien is created by the statute and not by the contract,
still a valid contract is essential to the creation of any lien under
the statute.

2. SAME—*the Mechanic's Lien statute not intended to abridge
right of contract.* The Mechanic's Lien statute was not intended
to abridge or curtail the right of contract between the parties; and
where a contract between the original parties waives the right to
a mechanic's lien or is of such a character that no lien can accrue
thereunder, the provisions of the Mechanic's Lien law, in so far as
they attempt to give a sub-contractor a lien in spite of the agree-
ment of the original contractor, are unconstitutional and void.

3. SAME—*clear language waiving all claim to a lien controls
other provisions of contract.* Clear language by which the original
contractor agrees to deliver the work "free from all claims, liens
and charges," controls other provisions of the contract from which
a sub-contractor might infer that he would have a lien, and as such
language is a clear waiver of all claims for mechanics' liens the
sub-contractor is presumed to have contracted with full knowledge
of that fact and acquires no additional rights by reason of the
original contractor becoming bankrupt.

4. SAME—*when owner's right to have work delivered free from
all claims for liens is not forfeited.* The right of the owner to the
benefit of a clear provision of the contract that the original con-
tractor will deliver the work free from all claims, liens and charges
is not forfeited because the owner inserts in the contract provi-
sions for his benefit allowing him to require the original contractor
to furnish statements of indebtedness and authorizing the owner
to withhold payments until such indebtedness is paid; nor is the
owner obligated by such provisions to carry them out for the bene-
fit of sub-contractors.

5. SAME—*section 21 of the Mechanic's Lien law is unconstitu-
tional.* Section 21 of the Mechanic's Lien law, in so far as it at-

tempts to give a sub-contractor a lien contrary to the clear terms of the original contract, is unconstitutional. (*Kelly* v. *Johnson,* 251 Ill. 135, *Cameron-Schroth-Cameron Co.* v. *Geseke,* id. 402, and *Rittenhouse & Embree Co.* v. *Wrigley Co. ante,* p. 40, adhered to.)

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

SHERIFF, DENT, DOBYNS & FREEMAN, (J. A. CONNELL, of counsel,) for appellants.

ADAMS, CREWS, BOBB & WESCOTT, (JAMES B. WESCOTT, of counsel,) for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This is an appeal from a decree of the superior court of Cook county establishing a mechanic's lien in favor of appellee, the Rittenhouse & Embree Company, on certain premises of appellants, the Chicago, Burlington and Quincy Railroad Company and Darius Miller, its president, located at the south-west corner of Jackson boulevard and Clinton street, in the city of Chicago, the property being owned by the Chicago, Burlington and Quincy Railroad Company although the legal title to the real estate is of record in the name of Darius Miller, president of that company. Appellee was a sub-contractor under the Warren Construction Company, to whom a contract was let by the Chicago, Burlington and Quincy Railroad Company, with the knowledge and consent of Miller, for the construction of certain work on the building to be constructed on the above premises. There is no controversy as to the facts or that appellee took all of the necessary steps to perfect a mechanic's lien under the Mechanic's Lien law of 1903, (Hurd's Stat. 1913, p. 1559,) provided the original contract between the Warren Construction Company and the Chicago, Burlington and Quincy Railroad Company was not of such a character as to waive or bar the lien of a sub-contractor or the

provisions of sections 5, 21 and 32 of the Mechanic's Lien law of this State are not unconstitutional. By their objections before the master in chancery and exceptions before the chancellor to the master's report, as well as by their seventh assignment of error in this court, appellants have questioned the constitutionality of sections 5, 21 and 32 of the said Mechanic's Lien law of this State, and it is by virtue of the seventh assignment of errors that the appeal is brought direct to this court.

The facts in the case, in so far as they are material to be considered in passing upon the questions raised, are substantially as follows: On November 24, 1911, the Chicago, Burlington and Quincy Railroad Company entered into a written contract with the Warren Construction Company to do all of the rough carpentry work required in the construction and completion of the fifteen-story and basement fireproof office building to be erected on the south-west corner of Jackson boulevard and Clinton street, in the city of Chicago, for the sum of $39,300. By this contract the Warren Construction Company agreed to construct, finish and deliver to the railroad company, "free from all claims, liens and charges, on or before the first day of June, 1912, all of the rough carpentry required in the construction and completion" of the building, and to furnish good, proper and sufficient materials, workmanship and labor of all kinds suitable and sufficient for the finishing and completing of the said work, etc., with the further provision that the amounts to be paid from time to time should in no case exceed ninety per cent of the value of the work done and materials furnished, the remaining ten per cent to be retained as part security for the faithful performance of the contract, and not to be paid until the expiration of thirty days after the completion of the work and the payment of all claims for labor and materials furnished and the return of all drawings and specifications to the architects. The contract also provided that upon request by the architects

the Warren Construction Company would furnish, from time to time, statements of all indebtedness for materials and labor furnished, used or expended upon the said work, and that if at any time during the progress of the work it should allow indebtedness to accrue for labor or materials which might become liens on said building or the ground on which it stands, the railroad company might refuse to make the payments as therein provided for until satisfactory evidence was furnished that said indebtedness had been discharged, and that if such evidence was not furnished within ten days after demand in writing, the railroad company might withhold the amount of such indebtedness and deduct the same from the amount agreed to be paid to the Warren Construction Company, or, at its option, might declare the entire agreement null and void and take possession of such work and complete the same, in which case the Warren Construction Company agreed to pay all loss or damages occasioned thereby. The Warren Construction Company began work upon the improvement contemplated by the written contract, and in May, 1912, entered into a verbal agreement with appellee to furnish certain lumber and building material to be used in the construction of the building, under which arrangement appellee furnished and delivered, and there was used in the improvement, lumber and building material of the value of $1209.24. In July following the Warren Construction Company failed, and on August 8, 1912, was adjudicated a bankrupt by the United States district court for the northern district of Illinois, leaving its work under the written contract incomplete. Thereafter, by order of the United States district court, the receiver in bankruptcy of the Warren Construction Company was directed to, and did, abandon the contract. Appellants, pursuant to certain provisions in the contract, then re-let the contract to finish the incompleted portion of work contracted for by the Warren Construction Company to

the B. J. Regnall Company, by which latter company the work was finally completed.

During the course of the work appellants paid on the contract the following amounts: To the Warren Construction Company $14,486.76; on the account of that company during the interim between the abandonment of the contract and the re-letting of the contract for the unfinished work $3922.70, and to the B. J. Regnall Company for completing the work $24,400, making a total amount of $43,809.66, or $4509.66 in excess of the original contract price. In making these various payments appellants did not obtain any statements from the contractor, as provided by section 5 of the Mechanic's Lien law of 1903. The trial court held that under the provisions of sections 21 and 32 of that act appellants could not claim credit for the payments so made, but, in so far as appellee was concerned, such payments must be regarded as never having been made, and entered a decree allowing a lien in favor of appellee for the sum of $1306.99. To reverse that decree this appeal has been prosecuted.

Appellants contend (1) that under the contract between the railroad company and the Warren Construction Company the latter company waived all right of lien, and consequently no right to a lien exists in favor of the appellee, a sub-contractor; (2) that inasmuch as the improvement cost in excess of the original contract price, appellants can not be charged with any greater liability than the amount of the original contract price, and that the provisions of sections 5, 21 and 32 of the Mechanic's Lien law, which are designed to impose a greater liability on the owner, are unconstitutional and void. Appellee contends (1) that all of the provisions of a written contract must be taken into consideration in construing the instrument, and that when the contract is so construed the right to maintain a mechanic's lien is clearly recognized in that·contract; (2) that sections 5, 21 and 32 of the Mechanic's Lien law do not

constitute an unlawful infringement of the free right to contract or constitute class legislation, and are not unconstitutional.

The foundation of the right to a mechanic's lien is a valid contract with the owner of the lot or tract of land to be improved, or with his duly authorized agent, for the construction of an improvement thereon and the furnishing of material and labor pursuant to the provisions of such contract, for while it is true that the lien is not created by the contract of the parties but is created by the statute, still a contract is essential to the creation of any valid lien under the statute. (*VonPlaten* v. *Winterbotham,* 203 Ill. 198.) The statute which gives a right to a mechanic's lien was not intended to abridge or curtail the right of contract between the parties, and where the contract between the original parties waives the right to a mechanic's lien or is of such a character that no right to a lien can accrue thereunder, the provisions of the Mechanic's Lien law, in so far as they attempt to give a sub-contractor a right to a lien in spite of such agreement between the original parties, are unconstitutional and void. *Kelly* v. *Johnson,* 251 Ill. 135; *Cameron-Schroth-Cameron Co.* v. *Geseke,* 251 id. 402; *Rittenhouse & Embree Co.* v. *Wrigley Co.* (*ante,* p. 40.)

The contract in question here provides, in its first paragraph, that the Warren Construction Company is to construct, furnish and deliver to the Chicago, Burlington and Quincy Railroad Company, "free from all claims, liens and charges, etc., all of the rough carpentry work required in the construction and completion of the fifteen-story and basement fireproof office building to be erected at the southwest corner of Jackson boulevard and Clinton street, in the city of Chicago." It is plain that under the provisions of this contract had the Warren Construction Company performed its contract no lien could have attached in favor of any sub-contractor. (*Brown Construction Co.* v. *Central Illinois Construction Co.* 234 Ill. 397.) The language of

the contract, "free from all claims, liens and charges," is too plain and specific in this respect to leave the matter open to question on that subject. When appellee contracted with the Warren Construction Company to furnish the materials for use in this building it is presumed to have done so with knowledge of the provisions of the contract between the Warren Construction Company and the Chicago, Burlington and Quincy Railroad Company and with the expectation that the Warren Construction Company would fully perform its contract with the railroad company. At the time appellee made its contract with the Warren Construction Company it did so with the full knowledge that if the Warren Construction Company complied with its contract it must look to the Warren Construction Company alone for its pay, and that no lien could attach to the premises in favor of appellee or any other sub-contractor under the Warren Construction Company. (*Brown Construction Co.* v. *Central Illinois Construction Co. supra.*) That the Warren Construction Company failed and became a bankrupt did not alter the situation. Appellee acquired no superior rights in the premises by reason of the failure of the Warren Construction Company to perform its contract with the railroad company.

Nor is it important that the contract may have contained other provisions from which a mechanic or material-man may have inferred that a lien could be asserted in favor of a material-man or sub-contractor. That question was passed upon by this court in *Brown Construction Co.* v. *Central Illinois Construction Co. supra,* where it was insisted that the covenant not to file a lien must so clearly appear from the contract that the mechanic or material-man would so understand it without consulting a lawyer. It was there said, on page 402: "It is apparent from *Van-Platen* v. *Winterbotham, supra,* that the law is not so in this State, but that the right of the sub-contractor to enforce a lien is barred whenever the contract entered into

264 — 40

by the owner contains 'an agreement that there shall be no lien.' We think that if the contract, when properly construed, is found to contain such an agreement it is binding upon the sub-contractor, whether or not he requires the assistance of a lawyer to understand its provisions." And on page 403 it was further said: "The contract here provided that the property should be delivered free from any and all liens, claims or encumbrances of any description, and we think the terms included the inchoate or incipient lien which exists before a notice is given or filed and before any attempt is made to assert the statutory right. If the work was delivered free from liens of that character then no lien could be asserted and enforced by appellant in this instance, after the completed work had been offered to and accepted by the railway company. The language above quoted from the original contract in this case amounts to 'an agreement that there shall be no lien,' and as the original contract, upon which the right of the sub-contractor depends, contains this provision the sub-contractor has no lien. The fountain cannot rise above its head." The same is true of the language of the contract in the case at bar, and *Brown Construction Co.* v. *Central Illinois Construction Co. supra,* is decisive of this case. That the contract contained other provisions which authorized the railroad company to retain a certain per cent of the contract price due as the work progressed to insure the faithful performance of the contract, to require, from time to time, statements to be furnished of all indebtedness for materials and labor, and to refuse to make payment, at any time during the progress of the work, until satisfactory evidence was furnished that all indebtedness which might become a lien on the building was discharged, and that if such evidence was not furnished within ten days after demand in writing it might withhold that amount and deduct the same from the contract price, or, at its option, declare the entire contract null and void and complete

the work itself, in no way altered or modified the provisions in the contract that the building was to be finished and delivered "free from all claims, liens and charges," before acceptance and final payment should be required of the railroad company. Those provisions in nowise obligated the latter to require such statements to be made or to retain such amounts for the benefit of the sub-contractors or material-men. They were rather intended for the benefit of the railroad company and to insure the prompt and faithful performance of the contract by the Warren Construction Company. Conditions might arise in which the work would be hindered and delayed by the failure of the Warren Construction Company to pay its sub-contractors or material-men or the work be stopped and the railroad company harassed by threatened attempts to enforce mechanics' liens, and to meet such contingencies as these those provisions may well have been inserted in the contract so as to enable the railroad company to require payment of such indebtedness and the work to proceed, or, at its option, to declare the contract void and complete the work itself. The railroad company forfeited none of its rights secured by the earlier provisions of the contract by embodying these additional provisions in the nature of additional security for the faithful and speedy performance of the contract. *Morris* v. *Ross,* 184 Pa. St. 241; *Getty* v. *Institute,* 194 id. 571.

Appellants also insist that sections 5, 21 and 32 of the Mechanic's Lien law are unconstitutional. It was by reason of the constitutional question involved as to these sections that the appeal was prosecuted direct to this court. Said section 21, in so far as it attempts to give a sub-contractor a lien which shall not be dependent upon the original contract, was held to be unconstitutional by this court in *Kelly* v. *Johnson, supra,* which decision was followed and adhered to in *Cameron-Schroth-Cameron Co.* v. *Geseke, supra,* and these decisions were again adhered to and followed in the late case of *Rittenhouse & Embree Co.*

v. *Wrigley Co. supra,* in which the constitutionality of section 21 was directly involved. It is not necessary to discuss the effect of sections 5 and 32.

For the reasons given, the decree of the superior court will be reversed and the cause remanded, with directions to dismiss the bill.

*Reversed and remanded, with directions.*