General Motors Acceptance Corporation, Appellant, v. A. H. Goldboges et al., Appellees.

Gen. No. 34,454.

 Heard in the third division of this court for the first district at the June term, 1930. Opinion filed March 11, 1931.

GOLDMAN, ALLSHOUSE & HEALY, for appellant; ROBERT G. DREFFEIN, of counsel.

No appearance for appellees.

MR. PRESIDING JUSTICE WILSON delivered the opinion of the court.

Plaintiff, General Motors Acceptance Corporation, brought this action in replevin against A. H. Goldboges, Atlantic Construction Co., George Brumlick, trading as Builders' Building Garage, and John Doe, for the recovery of a Chevrolet truck, which the plaintiff claimed as the assignee of the vendor under a conditional sales contract. The suit was subsequently dismissed as to all the defendants excepting George Brumlick, trading as Builders' Building Garage, whose claim to possession of the automobile was based upon his claim for a lien under the Garage Men's Lien Act.

Under a stipulation of the facts, it is admitted that the plaintiff was the assignee of the vendor under a conditional sales contract; that the vendee kept the Chevrolet truck in question in the garage of the defendant Brumlick; that there was a bill in favor of Brumlick for storage and repairs made on the car at the request of the vendee. The cause was submitted to the court and resulted in a finding in favor of the defendant and judgment on the finding, from which judgment this appeal has been taken.

The conditional sales contract provides that:

First: Title to the property shall not pass to the purchaser until the purchase price has been fully paid;

Second: Assignment of the contract should not release the purchaser from his obligation hereunder;

Third: In the event of default in payment, the full amount shall become due and payable and the vendor have the right to repossess;

Fourth: The purchaser shall keep said property free from all taxes, liens and incumbrances and shall not transfer any interest in the contract or the property.

The Lien Act under which defendant claims is found in Cahill's Illinois Revised Statutes of 1929, chapter 82, ¶ 45, and is entitled, "An Act for the better protection of any person, firm or corporation expending labor, skill or materials upon, or furnishing storage for, any chattel, creating a lien upon such chattel, and providing for the enforcement of such lien." This Act provides for a lien for such services and storage charges as had accrued to the defendant in this case by reason of work and labor on the Chevrolet truck and storage for the same. Said Lien Act also contains a provision that it is created in connection with and in addition to any common law lien in favor of the defendant.

The sole question involved is as to whether or not a garage man in this State shall have a lien superior to the right of a vendor under a conditional sales contract.

The Uniform Sales Act, Cahill's St. ch. 121a, ¶¶ 23 and 26, which was approved June 29, 1915, and in force July 1, 1915, provides that a vendor may sell with a reservation that the right of possession is in himself until certain conditions have been fulfilled, notwithstanding the delivery of the goods to the vendee and that any one purchasing said property from the vendee shall acquire no better title to the goods than the vendee had "unless the owner of the goods is by his conduct precluded from denying the seller's (vendee's) authority to sell." Prior to the adoption of this Act in this State, it had been consistently held, contrary to the general weight of authority, that a delivery of personal property to the purchaser under a

contract of conditional sale, with a retention of title in the seller, amounted to a constructive fraud. Under this rule it was held that one who dealt with the vendee, under a conditional sales contract without notice, acquired rights superior to those of the vendor. This was based upon the principle that possession indicated ownership and the vendor under a conditional contract, who clothed another with such indicia of ownership, was estopped to assert his claim against those who dealt with such a vendee. The rights of a vendor under such a conditional sales contract under the Uniform Sales Act, Cahill's St. ch. 121a, ¶¶ 23 and 26, as against a subsequent purchaser from the vendee, were passed upon in the case of *Sherer-Gillett Co. v. Long,* 318 Ill. 432. It was there held that such a sale was valid and the owner could repossess himself of the property, unless precluded by his conduct. It was stated in said opinion that, under the Uniform Sales Act, clothing another with the indicia of ownership, did not amount to constructive fraud, which had been the rule previously in effect in Illinois. The court in its opinion says:

"Owners of chattels must frequently entrust others with their possession, and the affairs of men could not be conducted unless they could do so with safety, so long as the possession of the chattel is not accompanied by some indicium of ownership or the right to sell. (*Drain v. LaGrange State Bank, supra.*) Whether the legislature should adopt the companion act, which provides for the recording of contracts of conditional sale, is not for this court to decide. The Uniform Sales Act recognizes the validity of such contracts and specifically provides that no title can be passed by the purchaser of goods under such a contract 'unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.'"

There is nothing in the case before us which shows conduct on the part of·the vendor under the conditional sales contract which would amount to such fraud as to deprive him of his rights under such sales contract. The Lien Act under which defendant claims, Cahill's St. ch. 82, ¶ 45, provides for a lien for labor and material furnished on any chattel, ''at the request of its owner, reputed owner, or authorized agent of the owner, or lawful possessor thereof.'' It was insisted at the trial that, under this provision, defendant had a lien because the work was done and the material furnished at the request of one who was the ''lawful possessor thereof.'' The plaintiff insisted that under section II, Article 2 of the Constitution of Illinois of 1870, the legislature has not the power to destroy vested property rights. *City of Chicago v. Wells,* 236 Ill. 129; *Millett v. People,* 117 Ill. 294; *Rittenhouse & Embree Co. v. Warren Const. Co.,* 264 Ill. 619; *Kelly v. Johnson,* 251 Ill. 135. In the latter case it was held that the lien of a subcontractor could exist only by virtue of the original contract and that, if the original contract provided that the work should be done by the original contractor free and clear of liens, a subcontractor would have no right to a lien under the Mechanic's Lien Act. The conditional sales contract in question provides that the vendee should keep the Chevrolet truck free and clear of all liens or incumbrances. This right of contract between the conditional sales vendor and vendee, it is insisted, is a vested right and the vendor could not be deprived of it by the Lien Act invoked by the defendant. To the same effect see *Rittenhouse & Embree Co. v. Warren Const. Co.,* 264 Ill. 619.

The Supreme Court of this State had occasion to pass upon the question with reference to the right of a garage keeper to a lien as against the rights of a mortgagee under a chattel mortgage. It is true that

in this case the chattel mortgage was recorded, but the court in a very strong opinion held that such was not the law. In its opinion it discussed at length the injury that might be done to the mortgagee by reason of extensive repairs made upon the chattel, which would practically defeat by their cost the equity which the mortgagee might have in the chattel. The same argument could be advanced in the case at bar. The vendee to the conditional sales contract might run up such a bill of expense that the vendor would be unable to repossess himself of the car, except at a prohibitive cost. The Supreme Court of this State in the case of *Ehrlich v. Chapple,* 311 Ill. 467, says:

"It is urged in this case that commercial necessity requires that the artisan's lien be preserved, and that where the mortgaged chattel is retained by the mortgagor, to be used in the course of the mortgagor's business, an artisan's lien should, in the nature of things, be considered prior to the mortgage. What constitutes commercial necessity is by no means easy of determination. By reason of the facility with which chattels of the character involved here can be moved, the chattel mortgage has become a very important feature of the automobile business. Large sums of money are invested in the manufacture and sale of automobiles and in the matter of loans upon them, and in the automobile business. Banks and automobile industries depend upon the chattel mortgage as a security in the sale of automobiles. It would be difficult to say that the purpose for which a car is used is more of a commercial necessity than the means of its production or the protection of mortgage liens. We know of no doctrine in the law which will countenance any necessity, commercial or otherwise, that would destroy the vested interest of a prior lien. The purpose of a mortgage is to furnish security while the mortgaged property is to be left with the mortgagor

for his convenience. It is of the basis of a contract of this character that nothing should be done or permitted by the mortgagor to impair the security, other than that which arises out of ordinary wear and tear. Courts should not, therefore, indulge in the presumption that an agreement existed between the mortgagee and the mortgagor that the mortgage lien should give way to a subsequent artisan's lien, but such should be shown by clear and cogent evidence.''

There are a number of cases in the reports in other States upon this question and the courts have differed in regard to the rights arising under similar circumstances. The Supreme Court of Maryland in the case of *Meyers v. Neeley & Ensor Auto Co.*, 143 Md. 107, held that the automobile repairman had a lien for services rendered as against the conditional sales vendor.

The Supreme Court of Utah in the case of *Cache Auto Co. v. Central Garage*, 63 Utah 10, 30 A. L. R. 1217, held that no such lien could attach as against the conditional sales vendor. In this case, however, it appears that the decision was based upon the construction of the Garage Men's Lien Act, and that a garage man's lien should attach as against the owner only.

In Indiana it has been held that the lien would not attach as against the conditional vendor unless repairs were made by and with his consent. *Atlas Securities Co. v. Grove*, 79 Ind. App. 144; *Madison Remedial Loan Ass'n v. Wells*, 79 Ind. App. 266.

The Appellate Court in and for the Third District of this State in the case of *Standard Motors Securities Corp. v. Yates Co.*, 257 Ill. App. 394, had occasion in a long and well considered opinion, to pass upon this question under circumstances practically identical. The court in its opinion says:

''If the act creating the lien could not be construed to extend to a machine covered by a chattel mortgage,

the possession of which by contract is in the mort-gagor until default, neither can it by construction be carried to a machine subject to a conditional sales contract, in which the legal title and the vested right of ownership is in the seller, and of which vested right he cannot be deprived except by due process of law.

"Some argument is made that the rule is against the best public policy of the State. This question is not before us, and if it were it need only to be sug-gested that no mechanic is called upon to work upon machines owned by others or without his pay, if he will use suitable diligence in that behalf."

We are of the opinion that under the authorities cited, the conditional vendor had a right to retain pos-session in himself as to the chattel sold and further had the right to contract with the vendee that no liens or incumbrances should become effective as against the property under any act done by the conditional vendee. It may be for the best interests of all concerned that the law should require the filing of the conditional sales contract as a matter of record, but this is a mat-ter for the consideration of the legislature and not the court. Hardships may arise by reason of the rule, but the right to contract as between parties is too well recognized as the law of this State. There was noth-ing in the case at bar from which it could be gathered that the conditional vendor was estopped by his con-duct, as the transaction was one which occurs daily in the regular course of commercial transactions be-tween people of this State.

We have not been aided in our consideration of this cause by any briefs or suggestions filed on behalf of the defendant. We are not asked to reverse and re-mand the cause for assessment of damages, but only to find issues for the plaintiff.

We are of the opinion that for the reasons stated, the judgment of the circuit court should be and it is re-

versed and, there being no dispute as to the facts, the facts having been agreed upon, judgment is entered here finding property in the plaintiff.

*Judgment reversed and judgment here.*

HEBEL and FRIEND, JJ., concur.