JACOB RUPPERT, APPELLANT, v. JOHN ZANG, APPELLEE.

Submitted December 1, 1904—Decided February 27, 1905.

1. Where a mortgagee permits the mortgagor of chattels to retain and use them, authority is impliedly conferred upon the mortgagor to have necessary repairs done upon the chattels, and the lien of an artificer for repairs done under employment by the mortgagor will have priority over the lien of the mortgage, although the latter be duly recorded.

2. Upon appeal, this court will not reverse a judgment of the District Court that is based upon its conclusion upon a mixed question of law and fact if the conclusion is legally inferable from the facts proven.

On appeal from Second District Court of Jersey City.

Before Justices FORT and PITNEY.

For the appellant, *William S. Stuhr*.

For the appellee, *Weller & Lichtenstein*.

The opinion of the court was delivered by

PITNEY, J. This was an action of replevin, in which the District Court rendered judgment in favor of the defendant.

The subject of the action was a wagon, detained by the defendant under claim of an artificer's lien.

The facts are as follows: In July, 1903, the wagon was owned by one Hintze, who carried on a beer-bottling business. He gave a chattel mortgage upon the wagon to the plaintiff, Ruppert. The mortgage was promptly recorded. The mortgagor was permitted to retain possession of the wagon, and continued to use it in his business. In September, 1903, it was greatly in need of repair, and was of very little value in its then condition. Hintze, the mortgagor, thereupon took it to the defendant to be repaired, without the knowledge or express consent of the mortgagee. The defendant did certain repair work, for which his charges amounted to $40.15, and he then turned the wagon over to a painter. In the agreed state of facts, it is set forth that it is "the custom of blacksmiths in such cases to attend to the painting." At the time of delivery to the painter the defendant instructed him not to deliver the wagon to Hintze, since he claimed a lien upon it for the repairs. From the recital concerning the custom of blacksmiths to attend to the painting, and from the averment that the defendant gave instructions to the painter, we infer that the defendant was a blacksmith, and that it was a part of his employment under Hintze to procure the painting to be done necessary to complete the repairs. Indeed, it is tacitly admitted in the brief of counsel for the appellant that the man who did the painting was employed to do it by the defendant, and not by Hintze or by the plaintiff. It appears, however, from the statement of facts, that when the painter had finished his work, the plaintiff gave to him a check for his bill and he delivered the wagon to Hintze without the knowledge or consent of Zang, the defendant. The wagon was then worth between $125 and $150, and presumably had been much enhanced in value by the work done upon it by Zang.

Thereafter the wagon was in use by Hintze until December 22d, 1903, when, by virtue of a power of sale contained in the plaintiff's mortgage, one Wise, as his agent, took possession of it and advertised it for sale, leaving it, however,

with Hintze, as caretaker, until the day of sale, which was set for December 28th. Meanwhile, on December 26th, the wagon again became broken, and Hintze delivered it once more to Zang for repairs without the knowledge or express consent of the plaintiff or of his agent, Wise. Zang knew nothing of the proceedings taken towards the sale of the wagon under the mortgage. He did further repairs upon it, for which, also, he claims an artificer's lien.

The sale was held on December 28th as appointed, at which time the plaintiff purchased the wagon, it being then in the possession of the defendant. Upon refusal by the defendant of the plaintiff's demand for its possession the present action was brought.

The trial court held that the lien of the defendant had priority over that of the mortgage, and on this ground rendered judgment in favor of the defendant.

The determination of the question of priority in favor of the defendant is a finding upon a mixed question of law and fact. Upon this appeal, limited in scope to questions of law, this court will not reverse a judgment that is based upon such a conclusion, if the conclusion is legally inferable from the facts proven. *Burr* v. *Adams Express Co.*, 42 *Vroom* 263.

In *White* v. *Smith*, 15 *Vroom* 105, where a wife was the owner of a wagon, which she allowed her husband to use in his business, and the wagon was taken by the husband to a wheelwright for necessary repairs, this court held the wheelwright entitled to a lien for his reasonable charges and denied the wife's right to reclaim the wagon without paying the charges. The decision was based upon the implied authority conferred by the wife upon the husband to have repairs made such as were necessary to keep it in a condition to be useful for the purpose for which it was designed to be used. Manifestly the like reasoning applies with at least equal force where a mortgagee permits a mortgagor to retain and use a mortgaged chattel. Indeed, the decision in White *v.* Smith was rested by this court largely upon the reasoning and authority of the leading English case of *Williams* v. *Allsup*, 10 *C. B.* (*N. S.*) 417; 30 *L. J., C. P.* 353; 8 *Jur.* (*N. S.*) 57,

which case arose between the mortgagee of a steamboat and a shipwright to whom the vessel had been delivered by the mortgagor for necessary repairs. The priority of the lien for repairs was affirmed on the ground of the implied authority of the mortgagor to have necessary repairs done upon the vessel on the ordinary terms.

The distinction between the common-law lien for repairs and a statutory or conventional lien for agistment or the like was pointed out by this court in *Sullivan* v. *Cliflon,* 26 Vroom 324.

From the facts that appear in the present case, the trial court might legitimately infer that Hintze had authority from the plaintiff to have the repairs done, notwithstanding the particular repairs in question were done without the knowledge or consent of the plaintiff. The absence of such consent does not necessarily negative implied general authority.

The fact that the plaintiff's mortgage was duly recorded, and he for that reason entitled to priority over creditors of the mortgagor, does not preclude the acquisition of a lien by the defendant that has priority over the mortgage. Defendant's lien arises from the act of the plaintiff himself in conferring authority upon Hintze to have the repairs done.

It is argued that the lien for the September repairs was waived by defendant, owing to his giving up possession of the wagon. If he had delivered the wagon to the painter as a person independently employed by Hintze, his own services being completed, the defendant would perhaps have waived the lien. But, as already remarked, the state of the case does not show this, and, on the contrary, is open to the inference that the painting repairs were a part of what was to be done by Zang under his employment by Hintze. We must assume that the trial court drew this inference.

Taking it, therefore, that the painter was the employe of the defendant and not of Hintze, the act of the defendant in turning the wagon over to the painter (his own agent) was not a waiver of his lien. On the contrary, the case clearly shows that at the time the defendant expressly asserted his

lien by instructing the painter not to deliver the wagon to Hintze. This being so, the action of the plaintiff, Ruppert, in paying the painter for his services and thereby procuring delivery of the wagon to Hintze without the knowledge or consent of Zang, the defendant, was a virtual fraud upon the latter, and cannot be held to have destroyed his lien, and he was entitled to reassert that lien whenever he could peaceably gain possession of the wagon.

The judgment under review will be affirmed, with costs.